STATE OF WEST VIRGINIA

*v.*

JOSEPH G. TOTTEN

(No. 15133)

Decided March 26, 1982.

*William W. Pepper* for appellant.

*Chauncey H. Browning*, Attorney General, and *Jerry Dove*, Assistant Attorney General, for appellee.

PER CURIAM:

The defendant, appealing from a misdemeanor conviction of carrying a dangerous weapon without a license in violation of *W.Va. Code*, 61-7-1, challenges the validity of a warrantless police search of the passenger compartment of his automobile. The defendant also maintains the State's proof did not establish that he carried the weapon "about his person" without the meaning of *W.Va. Code*, 61-7-1. We conclude that the police had probable cause for the search and therefore the revolver or pistol found in the defendant's vehicle was admissible and that the evidence established a violation of the statute. Accordingly, we affirm.

I

At approximately 10:30 a.m. on May 16, 1978, a police cruiser driven by a trooper of the West Virginia Department of Public Safety was passed by an automobile headed in the same direction on State Highway 19 in

Boone County, West Virginia. The trooper followed the vehicle and, after clocking it at 68 miles per hour in a 55 mile per hour speed zone, signaled the driver of the automobile to pull over by turning on the cruiser's flashing blue emergency lights. The driver of the vehicle pulled over without incident.

What happened next is the subject of conflicting testimony but we do not believe the factual disputes to be of any legal significance. It is undisputed that the defendant is the owner and was the driver of the 1975 Pontiac Grand Prix that was stopped by the trooper for speeding. The car was bearing a Michigan license plate. The defendant's license and registration were checked and found to be in proper order, and he was issued a citation for speeding. His car was then searched by two State Police officers. A .44 magnum revolver was found wrapped in a coat located either immediately behind the driver's seat or on the floor on top of the transmission just behind the vehicle's bucket seats.

The State Police officer who initially stopped the defendant for speeding testified as to the reason why the defendant's vehicle was searched. He stated that up to the time he obtained possession of the defendant's driver's license and registration, he thought he was dealing with an ordinary traffic offense but after seeing the defendant's name he viewed the case rather differently. He explained that over the past year he and several officers in his detachment had come into possession of the defendant's name and address and had been informed by four or five reliable informants that he was a drug dealer, who supplied the area with "hard" drugs.[1]

---

[1] Trooper Kim Harper testified:

"Q. And after you saw the operator's license and registration card did you then come to believe that you had something a little different than a speeding offense on hand?

A. Yes, sir, I did.

Q. Explain that to the Court?

A. Over the past year we have several arrests and Mr. Totten's name and address came into our possession, mine and several troopers on the detachment that he was dealing, supplying the area

The officer recognized the defendant's name and Michigan address on his license and registration from information provided to him by the informants. He believed the information provided him concerning the defendant's illegal drug trafficking activity was reliable because one of the informants had given information that had helped solve an armed robbery, and another informant had provided information concerning a kidnapping in the county. His information was that the defendant was bringing in the drugs from Michigan. The same informant that told him of the defendant's drug activity had also

---

with hard drugs, cocaine and stuff and I recognized the name and address, what reliable informants in the past told us.

Q. Have any idea how many sources advised that Mr. Totten was transporting drugs into this county?

A. Approximately four or five.

Q. Different people?

A. Yes, sir.

Q. Do you know the identity of all or some of those people?

A. All.

Q. You know the identity of all of them?

A. Yes, sir.

Q. Have you reason to believe the information provided you was reliable?

A. Yes, sir, very.

Q. What is the basis of your belief that the information was reliable without mentioning names?

A. One informant gave information that helped solve an armed robbery in the county, another informant a kidnapping in the county. They have been reliable in the past.

Q. At least four and possibly more such sources about Mr. Totten's activity in transporting drugs into the county?

A. Yes, Sir.

Q. It was your information that the drugs were brought in from Michigan?

A. Yes, sir. . . .

Q. The same informant that told you of Totten's drug activity also advised he went around armed?

A. That in the drug transactions he was always armed.

Q. And you thought there was a good possibility on that occasion he might have been transporting drugs?

A. Our informant has been very reliable in the past and on their word took it to be the vehicle possibly.

Q. And for those reasons you made the search?

A. Yes, sir."

indicated that the defendant was always armed while involved in drug transactions. The police officer, upon realizing who he was dealing with, radioed another member of the State Police seeking his assistance. When he arrived shortly thereafter in a second cruiser, both officers then conducted the search and found the pistol wrapped in a jacket. An immediate check was run to see if it was stolen. Ammunition for the weapon was also found during the warrantless search. The defendant admitted that it was his pistol and that he did not have a permit to carry it in West Virginia. At that point, he was placed under arrest.

A female passenger who was in the defendant's car at the time it was stopped for speeding drove the defendant's car to the police station. A short time later the defendant gave a written consent to a further search of the vehicle. This search produced no contraband or controlled substances of any kind.

The defendant's pretrial motion to suppress was denied following an *in camera* hearing on the ground that search was constitutionally permissible under the "automobile exception" to the warrant requirement established in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

## II.

The law governing warrantless searches of automobiles was recently discussed at some length in *State v. Moore*, ____ W.Va. ____, 272 S.E.2d 804 (1980). There the *Carroll* decision relied on by the trial court was carefully analyzed. That discussion need not be reiterated here beyond noting that the instant case is not a pure *Carroll* factual situation because the police did not have probable cause to believe the defendant's automobile contained contraband or other evidence of crime at the time he was initially stopped. Here the defendant was legitimately stopped for speeding. This case, like *Moore*, involves a variation of the *Carroll* doctrine.

In *Moore*, the vehicle was initially stopped for a missing tail light, and the question was whether the conduct or activity observed by the officer before and after the stop constituted probable cause justifying the warrantless seizure and search of a paper bag. As the police officer was stopped the car using his emergency lights, he saw the passenger lean forward. After the vehicle was stopped and the officer had reached the driver's side, he saw a brown paper bag protruding from under the front seat on the passenger side. Moore was asked to produce his operator's license, and his surname triggered a recollection in the trooper's mind that approximately two and one-half years earlier a person by the name of "Moore" had been the subject of a drug-related arrest in the county. On this basis, the officer reached into the car, seized the bag, and discovered what appeared to be marijuana. This Court reversed, concluding that these facts did not furnish probable cause to search the car for marijuana.

Syllabus point 4 of *Moore* sets forth the legal standard that must be applied in the present case:

> "An automobile may be stopped for some legitimate state interest. Once the vehicle is lawfully stopped for a legitimate state interest, probable cause may arise to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, and, at this point, if exigent circumstances are present, a warrantless search may be made."

The State recognizes in its brief that the pivotal question here is whether there was probable cause for the search. The State does not contend that the weapon was in plain view, *see*, e.g., *State v. Frisby*, 161 W.Va. 734, 245 S.E.2d 622 (1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 87 (1979), or that the search was incident to a lawful arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

Considering all the facts and circumstances, we conclude there was probable cause to conduct the warrantless search. Given the facts within the officer's knowledge

at the time of the search, he did have probable cause to believe that Totten was carrying contraband and exigent circumstances existed because at the time of the stop the car could be driven away. In note 7 of *Moore*, we cited *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), *Husty v. United States*, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931), and *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980) and stated:

> "The exigent circumstances in all three of these cases was the insufficient time to procure a warrant because of the mobility of the vehicles— that is, the automobiles could have been removed between the time they were seen and before a warrant could be obtained."

Not one, but several persons the officer knew to be reliable had informed him or other members of the local detachment of the State Police that during the past year the accused was trafficking in "hard" drugs in the local area, bringing them in from Michigan. Two of the persons providing this information to the police had been reliable in the past. Upon stopping the vehicle, the trooper recognized the defendant's name and address from his Michigan driver's license and registration and noted that his late model vehicle bore Michigan license plates.

Taking into account all the circumstances, we find the warrantless search of the defendant's car was constitutionally permissible. Consequently, the trial court did not err in refusing to suppress the evidence seized from the defendant's vehicle.

### III.

In his second assignment of error, the defendant maintains that the weapon wrapped in his jacket in the car does not come within the ambit of the dangerous weapon statute. The defendant's argument requires us to determine whether a person carries a revolver "about his person" within the proscription of *W. Va. Code*, 61-7-1,[2]

---

[2] *W. Va Code*, 61-7-1 states:

where the evidence reveals he was transporting a revolver in his vehicle wrapped in a jacket. Viewing the evidence in a favorable light to the government, the revolver was located within arm reach of the accused on the floor either directly behind the driver's side bucket seat or in the center just behind the bucket seat. Ammunition for the revolver was located in the jacket pocket.

Although not cited by either party, we have considered the scope of the phrase carry "about the person" in syllabus point 1 of *State v. Blazovitch*, 88 W.Va. 612, 107 S.E. 291 (1921):

> "Unlicensed carriage of a pistol or revolver in a grip, satchel or hand-bag held in the hand or connected with the person, constitutes an offense under sec. 7 of ch. 148 of the Code, unless it is done in such manner and under such circumstances as render it lawful by virtue of an exception or proviso found in said statute."

In affirming a conviction for carrying a pistol without a license, the Court held that carrying a revolver in a grip, satchel or handbag held in the hand or connected with the person constitutes an offense within the letter and spirit of the statute. Because of the purpose of the statute, the Court held that the phrase "about the person" was broad enough to encompass carrying a revolver in such manner, even though criminal statutes must be strictly construed against the government.

The Court's discussion of why the statute was enacted is instructive on the narrow legal issue presented here:

> "The manifest purpose of the statute is prevention of the carrying of deadly weapons, to the end that the temptation and power to employ them in assaults upon human beings, prompted by anger

---

"If any person, without a state license therefor or except as provided elsewhere in this article and other provisions of this Code, carry about his person any revolver or pistol . . . or other dangerous or deadly weapon or like kind or character, he shall be guilty of a misdemeanor. . . ."

or evil design, may be thwarted, and citizens freed from the terror the brandishment thereof inspires and their lives and limbs preserved. Prevention of injury by careless or negligent use of pistols, or accidental discharge thereof, is within the plain purpose of the statute. Inhibition of such carriage of deadly weapons as makes resort to them easy and ready is clearly within its purpose or spirit. A weapon carried in a satchel, valise, handbag, basket or saddle-bags cannot be resorted to as conveniently or quickly as one carried in a pocket or belt, but the ease and readiness with which it may be seized for use are apparent.

. . .

To come within the letter or terms of the statute, however, the act must amount to a carrying of such weapon about the person of the accused. It need not be on his person within the strict meaning of these words. If carried in a container of some kind held in the hand of the accused, it is manifestly about his person, though it may not be on his person." *Id.* at 614-15, 107 S.E. at 292.

In view of the purpose and language of *W. Va. Code,* 61-7-1, as discussed in *Blazovitch,* we conclude that in order for a dangerous weapon to be about the person in violation of *W. Va. Code,* 61-7-1, the weapon must be located either on the person or in such close proximity that it can be reached without a material change in his position and the weapon must be readily accessible when such person reaches to where it is located. The statute is violated where a person has a revolver in an automobile anywhere sufficiently close to be convenient in access or within immediate physical reach. The weapon does not have to be physically on or upon the person for the statute to be violated.

Although, as noted in *Blazovitch,* there is some conflict in the decisions interpreting similar statutes, our decision accords with the clear weight of modern authority. E.g., *People v. Davis,* 157 Cal.2d 33, 320 P.2d 88 (1958); *People v. R.J.A.,* 38 Colo.App. 346, 556 P.2d 491 (1976); *Sutton v. State,* 327 So.2d 234 (Fla.App. 1976), *overruled on other*

*grounds, Ensor v. State,* 403 So.2d 349 (Fla. 1981); *Collier v. Commonwealth,* 453 S.W.2d 600 (Ky.App. 1970); *People v. McClendon,* 23 Ill.App.2d 10, 161 N.E.2d 584 (1959); *State v. Goodwin,* 184 Neb. 537, 169 N.W.2d 270 (1969); *State v. Barrow,* 60 Oh.App.2d 335, 397 N.E.2d 422 (1978); *Annot.* 43 A.L.R.2d 492 (1955); 94 C.J.S. *Weapons* § 8(c) (1956).

It is also the general rule that whether the weapon was immediately available and accessible to use is ordinarily a question of fact for the jury. E.g., *Dubin v. State,* 397 A.2d 132 (Del. 1979); *Phillips v. Commonwealth,* 473 S.W.2d 135 (Ky. 1971); *Turley v. Commonwealth,* 307 Ky. 89, 209 S.W.2d 843 (1948); *Annot.,* 43 A.L.R.2d 505 (1955); 79 Am.Jur.2d, *Weapons & Firearms* § 9 (1975).

In the instant case, there was sufficient probative evidence from which a jury could reasonably conclude beyond a reasonable doubt that the defendant was guilty of carrying a revolver about his person in violation of the statute. The Court followed *Blazovitch, supra,* by giving State's Instruction No. 1.[3]

For the foregoing reasons, the judgment of the Circuit Court of Boone County is therefore affirmed.

*Affirmed.*

---

[3] "The Court instructs the jury that the accused, Joseph G. Totten, is charged with carrying about his person a dangerous (sic) and deadly weapon and the phrase "about his person" means that the weapon is readily accessible to the accused, and if the jury believes from the evidence in this case beyond a reasonable doubt that Joseph G. Totten was carrying about his person the 44 magnum pistol referred to in the evidence, at the time and place mentioned in the evidence, and that said pistol was readily accessible to said Joseph G. Totten while being so carried, the jury may find him guilty as charged in the indictment herein."