363 S.E.2d 493

**STATE of West Virginia**

v.

**Frank CHOAT.**

**No. 17539.**

Supreme Court of Appeals of West Virginia.

Nov. 18, 1987.

---

Jill Miles, Asst. Atty. Gen., for State.

Robyn Ruttenberg, Wheeling, for Choat.

McHUGH, Justice:

This case is before this Court upon the appeal of Frank Choat. It arises from an order of the Circuit Court of Ohio County which placed the defendant on two years probation after he was found guilty by a jury of carrying a dangerous or deadly weapon without a state license in violation of *W.Va.Code*, 61–7–1 [1975]. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

I

On September 2, 1985, two Wheeling police officers, Cecil Chiplinski and Keith Brown, were patrolling the Wheeling Island area located in Ohio County. At approximately 3:00 a.m., the officers observed three individuals standing outside a van which was parked approximately thirty yards from an area bar known as Mr.

Zee's.[1] Officer Chiplinski testified that he observed at least one of the individuals holding a can of beer in his hand. He testified that the individual appeared to be drinking beer because he had held the can to his lips. Officer Brown noticed that one of the individuals was carrying a brown paper bag. Upon seeing the approaching police cruiser, Brown observed the individual move toward the van.

Because drinking beer in public is in violation of a Wheeling city ordinance, the officers decided to stop and investigate. As the officers exited their cruiser, all three of the individuals moved toward the van. The officers then instructed the men to move away from the vehicle. Initially, the appellant cooperated and moved away from the van. Shortly thereafter, Officer Brown stated that the appellant leaned into the van, and at that time he had lost sight of the appellant's hands.

Officer Brown then grabbed the appellant, placed him against the van and patted down the outside pocket of his pants. Inside the appellant's right pants' pocket was a lock-blade knife with a five-and-one-half inch blade. The appellant was arrested for carrying a dangerous or deadly weapon without a license in violation of *W.Va. Code*, 61–7–1 [1975].

Prior to trial, the appellant sought to suppress evidence of the knife as the fruit of an illegal search. After an evidentiary hearing was held regarding the appellant's suppression motion, the trial court concluded that the search of the appellant was reasonable under the totality of the circumstances and denied the appellant's motion.

II

The first issue before us in this appeal is whether the stop and frisk of the appellant by the police officers constituted a reasonable search and seizure under the fourth amendment to the *United States Constitution* and article III, section 6 of the *West*

1. Evidence adduced at a suppression hearing prior to the appellant's trial established that the vicinity surrounding Mr. Zee's was a high-crime area.

*Virginia Constitution.*[2] For the reasons hereinafter stated, we hold that under the circumstances of this case, the stop and frisk of the appellant was reasonable and thus constitutionally permissible.

It is fundamental that warrantless searches are *per se* unreasonable under the fourth amendment to the *United States Constitution* unless they fall within a limited number of carefully defined exceptions. *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290, 298–99 (1978); *Schneckcloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858 (1973); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967).

■ We also adopted this principle under article III, section 6 of the *West Virginia Constitution* in syllabus point 1 of *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980): "[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions...." *See also State v. Peacher,* 167 W.Va. 540, 562, 280 S.E.2d 559, 574–75 (1981); *State v. Duvernoy,* 156 W.Va. 578, 583, 195 S.E.2d 631, 634–35 (1973), *quoting Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971).

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court carved out an exception to the general warrant requirement set forth above.[3] There, the court noted that

while the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure, and in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances, the police "stop and frisk" procedure cannot be subjected to the warrant procedure. The court reasoned that the police "stop and frisk" is a "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat" and that it would be impractical to subject such conduct to the warrant requirement. 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. Instead, the court determined that the police conduct involved in a "stop and frisk" must be tested by the fourth amendment's general proscription against unreasonable searches and seizures. *Id.*

■ Pursuant to the court's ruling in *Terry v. Ohio,* in determining whether police conduct associated with a stop and frisk is reasonable, under the fourth amendment to the *United States Constitution* the inquiry is two-fold: (1) whether the police conduct is justified at its inception, 392 U.S. at 27–28, 88 S.Ct. at 1883, 20 L.Ed.2d at 909, and (2) whether the search was reasonably related in scope to the circumstances which justified the initial interference. 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 910. *See also State v. Joseph T.,* 175 W.Va. 598, 602, 336 S.E.2d 728, 732 (1985).

In *Terry,* the Court specifically ruled that:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that

**2.** The fourth amendment to the *United States Constitution* reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." Article III, section 6 of the *West Virginia Constitution* contains parallel language.

**3.** In addition to the exception to the warrant requirement recognized by the United States Supreme Court in *Terry v. Ohio, supra,* other

exceptions have been recognized and categorized by the United States Supreme Court. *See, e.g., Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (search incident to lawful arrest); *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (plain view); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (automobiles). *See also State v. Peacher,* 167 W.Va. 540, 563, 280 S.E.2d 559, 575 (1981), collecting cases at note 10.

criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

392 U.S. at 30–31, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.

■ A brief investigative stop is therefore permissible whenever the police officer has a reasonable suspicion grounded in specific and articulable facts that the person he stopped has been or is about to be involved in a crime. *United States v. Moore,* 817 F.2d 1105, 1107 (4th Cir.1987); *United States v. Hensley,* 469 U.S. 221, 227, 105 S.Ct. 675, 680, 83 L.Ed.2d 604, 611 (1985); *Terry v. Ohio, supra. See also State v. Stanley,* 168 W.Va. 294, 297 n. 1, 284 S.E.2d 367, 369 n. 1 (1981). Indeed, " 'it may be the essence of good police work' to maintain the status quo with a brief stop that allows the police officer to investigate further the possibility of criminal involvement." *United States v. Moore,* 817 F.2d 1105, 1106–07 (4th Cir.1987), *quoting Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–17 (1972).

The federal Court of Appeals for the Fourth Circuit recently discussed the principles established in *Terry* and determined that the stop and frisk of an individual was reasonable and thus permissible under the fourth amendment. *See United States v. Moore,* 817 F.2d 1105 (1987). The logic of the court in that case may be applied in the case now before this Court. In *Moore,* the police officer had received a call from the

police dispatcher that a "silent" burglar alarm at a local education center had sounded at the police station. The officer then responded to the call. As he approached the center, he observed the defendant approximately 30 yards from the building, which but for the defendant's presence, was otherwise deserted. The officer then stepped out of his car and told the defendant to stop and turn around. The officer informed the defendant that he was responding to the center's alarm and that he intended to pat him down "for his safety as well as mine." After patting the defendant around his waist and pants pockets, the officer felt a hard object that he believed was a handgun. He retrieved the gun from the defendant's pocket and arrested the defendant. At his trial for illegal possession of the handgun, the defendant moved to suppress the gun, arguing that the police officer's conduct violated his fourth amendment rights. The motion was denied by the district court.

The court ultimately determined that a combination of factors justified the stop in *Moore.* The court noted that when the officer approached the site of the alarm, he saw the appellant close to one of the entrances of the building. In addition, the court focused on the fact that the call came late at night and that the defendant was the only person in the vicinity.

■ In concluding that the *Terry*-type stop in *Moore* was reasonable, the Court determined that the circumstances discussed above supported a well-founded suspicion that the appellant was involved in the break-in. Although the court recognized that an individual's presence in a high-crime vicinity is not alone sufficient to raise a reasonable suspicion, it noted that " '[a]n area's disposition toward criminal activity is an articulable fact' " to be considered in determining the reasonableness of the stop. *Moore, supra* at 1107, *quoting United States v. Constantine,* 567 F.2d 266, 267 (4th Cir.1977). Thus, the criminal propensity of a police officer's beat is a factor that a court may properly consider in assessing the reasonableness of an investigatory stop.

In the case before us, although the police officers were not responding to a police call, they observed criminal activity afoot while patrolling the Wheeling Island area, an acknowledged high-crime area. *See* note 1, *supra.* Furthermore, Officer Chiplinski observed that one of the individuals appeared to be drinking a beer in public in violation of a Wheeling city ordinance. In *State v. Drake*, 170 W.Va. 169, 171, 291 S.E.2d 484, 486 (1982), we determined that an open beer bottle in an automobile, in violation of a municipality's open alcoholic bottle ordinance, was sufficient cause for the investigating officer to require the defendant to step out of his vehicle, although the defendant was not ultimately arrested for violation of this ordinance. Similarly, in the case now before us, the officer's observation that one of the individuals was drinking a beer was sufficient cause for the officers to stop and investigate the scene. In addition, these events transpired at an extremely early hour, approximately 3:00 in the morning.

 Under the circumstances of this case, we are of the opinion that the officers were justified in conducting the investigatory stop of the appellant and his companions. We conclude that where a police officer observes individuals in a high-crime vicinity during the early morning hours and has reason to believe at least one of those individuals is violating a city ordinance, an investigatory stop conducted by the police officers is constitutionally permissible. *U.S. Const.* amend. IV. *W.Va. Const.* art. III, § 6.

Having concluded that the initial investigatory stop was reasonable, we must now determine whether the subsequent frisk of the appellant for weapons was warranted in the case before us.

In this regard, the Supreme Court of the United States in *Terry v. Ohio, supra,* instructs us that under the fourth amendment there is narrowly drawn authority

> to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he

has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. *See also Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972); *United States v. Moore*, 817 F.2d 1105, 1107 (4th Cir.1987); *United States v. Longmire*, 761 F.2d 411, 419 (7th Cir.1985). In determining whether the officer acted reasonably under the circumstances, the court noted that "due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he [or she] is entitled to draw from the facts in light of his [or her] experience." 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

 We adhere to the standard set forth by the court in *Terry* and its federal progeny and accordingly hold that where a police officer making a lawful investigatory stop has reason to believe that an individual is armed and dangerous, that officer, in order to protect himself and others, may conduct a search for concealed weapons, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be certain that the individual is armed; the inquiry is whether a reasonably prudent man under the circumstances would be warranted in the belief that his safety or that of others was endangered. *U.S. Const.* amend. IV. *W.Va. Const.* art. III, § 6.

 As we discussed above, in the case before us the setting was early in the morning in a vicinity known for its high criminal propensity. In addition, the officers were outnumbered by the individuals three to two. *See United States v. Moore*, 817 F.2d 1105, 1108 (1987). Importantly, in the case before us, the appellant, although cooperative with the officers initially, disobeyed their directive to stay away from his companions' van by leaning into a compartment on the passenger side of the van.

At that point, Officer Brown lost sight of the appellant's hands.[4] Fearing for his own safety and that of his partner, Officer Brown grabbed the appellant, placed him against the van and proceeded to pat down his pockets. Under the totality of circumstances in this case, the officer was warranted in his belief that his safety and that of his partner was endangered and was justified in conducting the subsequent frisk of the appellant for weapons. *See Terry v. Ohio*, 392 U.S. 1, 28, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 910 (1968).

 Moreover, the scope of the search for weapons conducted in this case was limited and reasonably designed to discover possible hidden weapons or instruments that the appellant may have had in his possession. The Court noted in *Terry* that "[t]he sole justification of the search ... is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. The scope of the search presents no problems in light of the above standard. Officer Brown's intrusion of the appellant was limited in that he merely patted down the appellant's outer clothing. *See United States v. Moore*, 817 F.2d 1105, 1108 (1987). The officer confined his search to what was necessary to discover whether the appellant possessed a weapon and to disarm him once it was discovered.

Based upon the foregoing, we conclude that the trial court's denial of the appellant's motion to suppress the knife as the fruit of an illegal search was proper.

### III

The next issue presented for our consideration in this appeal is whether the trial court erred in holding that the five-and-one-half inch lock-blade knife seized from the appellant was a dangerous or deadly weapon as a matter of law and whether it was error for the trial court to instruct the jury accordingly.[5]

*W.Va.Code*, 61–7–1 [1975], provides in pertinent part:

4. During a suppression hearing held prior to the appellant's trial, Officer Brown testified that he had observed the appellant placing his right hand into his pants pocket. Subsequently, at the appellant's trial, this witness indicated that he had seen the appellant's "hands going inside his pocket."

5. In the case before us, we need not address the constitutionality of *W.Va.Code*, 61–7–1 [1975] in light of the "Right to Keep and Bear Arms" amendment to the *West Virginia Constitution.* The amendment succinctly provides that "[a] person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use." *W.Va. Const.* art. III, § 22.

The amendment was ratified by the voters of this State on November 4, 1986, and was not in effect at the time the case before us was tried. The parties did not argue the constitutionality of the statute before the trial court nor before us.

The Supreme Court of Utah was faced with a similar dilemma relating to that state's recently adopted constitutional amendment regarding the right to bear arms in *State v. Wacek*, 703 P.2d 296 (Utah 1985). The Utah amendment contains language similar to that embodied in art. III, § 22 of the *West Virginia Constitution:* "The individual right of the people to keep and

bear arms for security and defense of self, family, others, property, or the state, as well as for other lawful purposes[,] shall not be infringed; but nothing herein shall prevent the legislature from defining the lawful use of arms." *Utah Const.* art. I, § 6.

The case challenged the constitutionality of the statute governing the crime of possession of a dangerous weapon by a restricted person in light of the new constitutional amendment. Even assuming that the change in the language of art. I, § 6 relating to the right to bear arms changed the substantive rights under the *Utah Constitution,* the court reasoned that the defendant was not in a position to advance the claim because the statute was clearly constitutional under the language in effect when the defendant was charged with the crime. 703 P.2d at 297–98.

Furthermore, a constitutional amendment is to be given only prospective application, unless the intent to make it retroactive clearly appears from its terms. *Torvinen v. Rollins*, 93 Nev. 92, 94, 560 P.2d 915, 917 (1977); *People v. Elliott*, 186 Colo. 65, 68, 525 P.2d 457, 458 (1974).

For a comprehensive discussion of the legislative history of this amendment as well as its possible impact, see McNeely, *The Right of Who to Bear What, When, and Where—West Virginia Firearms Law v. The Right-to-Bear-Arms Amendment,* 89 W.Va.L.Rev. 1125 (1987).

If any person, without a state license therefor or except as provided elsewhere in this article and other provisions of this Code, carry about his person any revolver or pistol, dirk, bowie knife, slung shot, razor, billy, metallic or other false knuckles, or other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor, ...[6]

In the case before us, the knife obviously does not fall among those weapons enumerated in the statute above. The appellant therefore contends that the determination of whether the knife is a dangerous or deadly weapon must then be a factual question for the jury. Conversely, the State argues that the question of whether the knife is a dangerous or deadly weapon proscribed under *W.Va.Code*, 61–7–1 [1975] is a question of law to be determined by the trial judge pursuant to this Court's holding in *Village of Barboursville ex rel. Bates v. Taylor*, 115 W.Va. 4, 174 S.E. 485 (1934). In the case before us, the trial court adhered to that principle established in *Barboursville* and instructed the jury accordingly.

In *Village of Barboursville ex rel. Bates v. Taylor, supra,* this Court developed a criteria for the inclusion of a weapon not specified in the statute as "dangerous or deadly." The Court determined that the statute, *W.Va.Code*, 61–7–1 [1931], prohibiting the carrying of dangerous or deadly weapons, was "intended to proscribe the carrying about the person of such instruments as are dangerous *per se*—inherently, intrinsically, characteristically." The Court classified objects which might be subjected to statutory regulation into two categories: (1) articles intended as weapons, such as revolvers, billies, dirks and metallic knuckles; and (2) articles the primary use of which is not as weapons but which are readily adaptable to that use. The Court ultimately held that "articles intended as weapons," although not specified in the statute, would be "dangerous or deadly within the statutory meaning if in its intended or readily adaptable use it is likely to produce death or serious bodily injury." 115 W.Va. at 7–8, 174 S.E. at 487.

Because the implement in question in the case before us is not specifically enumerated in the statute, it is not a dangerous or deadly weapon *per se* and falls into the second category classified by the Court in *Barboursville.*

In syllabus point 1 of *Village of Barboursville ex rel. Bates v. Taylor*, 115 W.Va. 4, 174 S.E. 485 (1934), this Court specifically held:

> Where a statute prohibits carrying about the person 'any revolver or other pistol, dirk, bowie knife, slung shot, razor, billy, metallic or other false knuckles, or *other dangerous or deadly weapon of like kind or character,*' an article planned and made for a weapon, not named in the statute, is a dangerous weapon within the statutory meaning if in its intended or readily adaptable use it is *likely* to produce death or serious bodily injury. If it be of that nature, it is of like kind and character to those enumerated in the statute.

(emphasis in original) The Court noted that the determination of whether a "fountain pen tear gas gun" is a "dangerous or deadly weapon" within the statutory prohibition of *W.Va.Code*, 61–7–1 [1931] was a question of law and depended on the probable effects of firing tear gas from the gun, as well as its adaptability for firing other charges.

There are many useful and practical instruments which are carried by persons for peaceful purposes, which may be adaptable to produce death or bodily injury, i.e., pocket knives, butcher knives, cutting tools.

---

6. In order to withstand a constitutional vagueness challenge, "[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." Syl. pt. 1, *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974); *accord* syl. pt. 1, *State v. Reed,* 166 W.Va. 558, 276 S.E.2d 313 (1981); syl. pt. 2, *State v. Less,* 170 W.Va. 259, 294 S.E.2d 62 (1981).

The constitutionality of *W.Va.Code,* 61–7–1 [1975] with respect to principles of statutory vagueness was not raised below and is not before us in this case.

Such instruments become dangerous or deadly only when they are used or carried for use as a weapon.

Various jurisdictions have considered whether particular instruments are dangerous or deadly weapons pursuant to their respective weapons statutes and a discussion of those cases is warranted here.

In *State v. Green*, 62 N.J. 547, 303 A.2d 312 (1973), the defendant and a companion were observed in the act of shoplifting and then leaving a store. The defendant and his companion were apprehended and a search revealed that each had a pocketknife in his possession. The defendant's knife had a single folding blade approximately three and one-half inches long and would not lock when open. The defendant's conviction was ultimately reversed for instructional error, but the court held that the evidence would have sustained the defendant's conviction for possession of a "dangerous knife" even though the knife was not included in the enumeration of proscribed instruments by statute to be a dangerous and deadly weapon *per se*. In so holding, the court recognized that:

> [p]lainly the possession of any knife is not an incriminatory offense and a knife, popularly known as a pocketknife, penknife or jackknife, commonly carried for personal utility, convenience or other lawful purpose is not a 'dangerous knife' *per se*. That is not to say, however, that such a knife, irrespective of the length of its blade or the circumstances under which it is carried, may not be a lethal weapon and should be excluded ... from the term 'dangerous knife' the possession of which is interdicted by statute. Distilled from the rationale of our relevant statutes and the prevailing decisional law is a reasonable conclusion that a knife which is not dangerous *per se* will be a 'dangerous knife' *if the purpose of its possession is its use as a weapon.*

62 N.J. at 560, 303 A.2d at 319 (emphasis in the last two lines added).

In *Clarke v. United States*, 256 A.2d 782 (D.C.1969), the defendant was convicted of carrying a dangerous or deadly weapon after he was found to have been carrying a straight razor which he had concealed. The defendant was eventually apprehended by a police officer after a report from a man that the defendant may have robbed someone. The defendant ran as the officer walked toward him. In upholding the defendant's conviction for the possession of a dangerous or deadly weapon, the court said:

> The test is '[whether] the purpose of carrying the object, under the circumstances, is its use as a weapon.' This may be shown by an examination of the time and place the defendant was found carrying it, among other circumstances. Moreover, in the absence of any explanation from defendant, the conceivable legitimate reasons for carrying such an instrument in that setting are a proper subject of inquiry. The jury could well have concluded that appellant was not carrying the razor on the street for use 'as a tool in [a] certain [trade] or [hobby] or ... for utilitarian reasons.'

256 A.2d at 786 (citations omitted); *see also State v. Baldwin*, 571 S.W.2d 236, 242 (Mo. 1978).

Other jurisdictions have construed weapons statutes worded similarly to the West Virginia statute to include a factual test of whether, under the surrounding circumstances, the purpose of carrying the object or instrument was for use as a weapon. *State v. Blea*, 100 N.M. 237, 238–39, 668 P.2d 1114, 1115–16 (1983); *State v. Rackle*, 55 Haw. 531, 537, 523 P.2d 299, 303 (1974). However, proof of intent to actually use an article to inflict bodily harm may not be necessary. Rather, the test is whether the purpose of carrying the item was its use as a weapon. *See Leftwich v. United States*, 251 A.2d 646, 649 (D.C.1969); *see also State v. Green*, 62 N.J. 547, 560, 303 A.2d 312, 319 (1973); *State v. Blea*, 100 N.M. 237, 239, 668 P.2d 1114, 1116 (1983).

■ The determination of whether a particular instrument is a "dangerous or deadly" weapon under *W.Va.Code*, 61–7–1 [1975] depends upon a variety of factors including: (1) the nature of the instrument, i.e., its size, shape, condition and possible alteration; (2) the circumstances under

which it is carried, i.e., the time, place and situation in which the defendant is found with it; (3) the defendant's actions *vis-a-vis* the item; and (4) the place of concealment. *State v. Blea,* 100 N.M. 237, 239, 668 P.2d 1114, 1116 (1983); *see also Scott v. United States,* 243 A.2d 54, 56 (D.C.1968); *State v. Baldwin,* 571 S.W.2d 236, 242 (Mo.1978); *State v. Green,* 62 N.J. 547, 560, 303 A.2d 312, 319 (1973).

■ This Court has recognized that *W.Va.Code,* 61–7–1 [1975] is a penal statute, *State v. Hodges,* 172 W.Va. 322, 327, 305 S.E.2d 278, 284 (1983), and "[p]enal statutes must be strictly construed against the State and in favor of the defendant." Syl. pt. 3, *State ex rel. Carson v. Wood,* 154 W.Va. 397, 175 S.E.2d 482 (1970); *see also State v. Cain,* 178 W.Va. 353, 357, 359 S.E.2d 581, 585 (1987); syl. pt. 3, *State v. Nichols,* 177 W.Va. 483, 354 S.E.2d 415 (1987); syl. pt. 1, *State v. Turley,* 177 W.Va. 69, 350 S.E.2d 696 (1986). This Court elaborated on this point in *Myers v. Murensky,* 162 W.Va. 5, 245 S.E.2d 920 (1978), *overruled on another point,* syl. pt. 2, *State v. Myers,* 171 W.Va. 277, 298 S.E.2d 813 (1982):

> The Court is not at liberty to consider the intent or purpose of a criminal statute to the extent possible in other areas of the law where the Legislature's intent is not precisely expressed.... [A]mbiguous penal statutes are strictly construed against the State and favorably to the liberty of the citizen.

162 W.Va. at 8–9, 245 S.E.2d at 922. *Accord, State v. Brumfield,* 178 W.Va. 240, 246, 358 S.E.2d 801, 807 (1987); *State v. Turley, supra,* 177 W.Va. at 72, 350 S.E.2d at 700. "This principle rests on the fear that expansive judicial interpretations may create penalties for offenses that were not intended by the legislature." *State v. Brumfield, supra.*

■ In *Village of Barboursville ex rel. Bates v. Taylor, supra,* the Court recognized that an instrument may or may not

be a dangerous weapon depending upon its use. 115 W.Va. at 7, 174 S.E. at 486. In light of the Court's recognition of that principle in *Barboursville,* as well as the substantial precedent favoring such a rule, we like other jurisdictions, construe *W.Va. Code,* 61–7–1 [1975] to include the factual test as to whether, under the circumstances, the purpose of carrying the instrument was for use as a weapon. *See* discussion *supra.*

Hence, a finding as to the defendant's purpose in carrying the instrument is necessary to determine the guilt or innocence of an accused charged with carrying an instrument not specifically enumerated as a deadly weapon by the statute.

■ Based on the foregoing, when the instrument involved in a prosecution under *W.Va.Code,* 61–7–1 [1975] is not one specifically enumerated in the statute, the issue as to whether it is a "dangerous or deadly weapon" is essentially a factual determination and must be submitted to the jury, unless the trial court can determine as a matter of law that under the evidence in the case the jury could not have concluded that the weapon was dangerous or deadly. *See State v. Baldwin,* 571 S.W.2d 236, 241 (Mo.1978); *People v. Vaines,* 310 Mich. 500, 505–06, 17 N.W.2d 729, 731 (1945). *See also State v. Totten,* 169 W.Va. 729, 738, 289 S.E.2d 491, 496 (1982) (whether weapon was immediately available and accessible to use is ordinarily a question of fact for the jury). To the extent that this Court's holding in *Village of Barboursville ex rel. Bates v. Taylor,* 115 W.Va. 4, 174 S.E. 485 (1934), is inconsistent with this opinion, it is hereby overruled.[7]

■ Because the knife confiscated from the appellant was not a "dangerous or deadly weapon" *per se* pursuant to *W.Va. Code,* 61–7–1 [1975], it was reversible error for the trial court to so instruct the jury.

The instrument in the case before us was a lock-blade knife with an approximately five-and-one-half inch blade. In light of the

---

7. In *Village of Barboursville ex rel. Bates v. Taylor, supra,* this Court specifically ruled that "where the offense charged is the unlawful carrying about of the person of a dangerous or deadly weapon, the question of whether a particular instrument comes within the inhibited category is a legal problem to be decided by the court." 115 W.Va. at 7, 174 S.E. at 486.

standard articulated above, we remand this case for a jury to determine whether the knife carried by the appellant was, in fact, a "dangerous or deadly weapon" pursuant to *W.Va.Code*, 61–7–1 [1975].

For the reasons set forth in section III of this opinion, the judgment of the Circuit Court of Ohio County is reversed and remanded.

Reversed and remanded.

NEELY, Justice, dissenting:

I dissent to the majority's holding today because I find that *W.Va.Code*, 61–7–1 [1975] is facially unconstitutional as applied to Mr. Choat due to its indefinite language describing deadly weapons. In criminal law, the cynosure of due process is that criminal statues provide fair notice of the offending conduct being proscribed. *W.Va.Code*, 61–7–1 [1975] provides in pertinent part:

> If any person, without a state license therefor or except as provided elsewhere in this article and other provisions of this Code, carry about his person any revolver or pistol, dirk, bowie knife, slung shot, razor, billy, metallic or other false knuckles, *or other dangerous or deadly weapon of like kind or character,* he shall be guilty of a misdemeanor, ... [Emphasis Added].

The two prong test for determining whether a statute is "void for vagueness," was laid out in *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).[1] Justice Douglas, writing for the majority, held that a municipal vagrancy ordinance was void for vagueness, both in the sense that it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," and "because it encourages arbitrary and erratic arrests and convictions." 405 U.S. at 162, 92 S.Ct. at 843. These two tests are taken from a synthesis of *U.S. v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954); *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); and, *Herndon v. Lowry*, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937). Therefore, to pass constitutional muster, a statute must: (1) provide definite notice of the offending conduct; and, (2) not invite arbitrary and selective application by prosecutors and police. The statute under consideration, *W.Va. Code*, 61–7–1 [1975] flunks both tests.

In the present case, the appellant was convicted of carrying a dangerous weapon, described as a lock blade, buck knife with a five inch blade. The majority found that the appellant's weapon, although not specifically enumerated in *W.Va.Code*, 61–7–1 [1975], was deadly within the catchall phrase "or deadly weapon of like kind or character." This indefinite language, as now interpreted by the Court, will allow this statute to be selectively construed and enforced by police, prosecutors and triers-of-fact: as interpreted by the majority, the statute invites discrimination against the poor, minorities, and those disfavored by the authorities.

"No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). *See Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Cline v. Frink Dairy*, 274 U.S. 445, 465, 47 S.Ct. 681, 687, 71 L.Ed. 1146 (1927); *Champlin Ref. Co. v. Corporation Commission*, 286 U.S. 210, 243, 52 S.Ct. 559, 568, 76 L.Ed. 1062 (1932); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 (1921); 14 A.L.R. 1045.

In *United States v. Reese*, 92 U.S. (2 Otto) 214, 23 L.Ed. 563 (1875), the U.S. Supreme Court struck down a broad criminal statute enacted by Congress, holding:

> "It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say

---

1. For a discussion of the void-for-vagueness doctrine in the area of fundamental rights see *note,* "The Void for Vagueness Doctrine in the Supreme Court," 109 U.Pa.L.Rev. 67, 104 *et seq.* (1961).

who could be rightfully detained, and who should be set at large."

92 U.S. at 221. The majority's interpretation of *W.Va.Code*, 61–7–1 [1975] creates the exact scenario that the Supreme Court warned about in *Reese*. Furthermore, because today this Court has erred in a matter of significant federal constitutional dimensions, this case should be reviewed by the Supreme Court of the United States.