*No. 23-277, State v. Carter*

**FILED**
**April 21, 2025**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

BUNN, Justice, dissenting:

The majority's conclusion that home incarceration, as a condition of pretrial bond or bail, is custody for the purposes of West Virginia Code § 61-5-10 (the "escape statute") is at odds with the rule of lenity, which "ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota v. United States*, 471 U.S. 419, 427, 105 S. Ct. 2084, 2089, 85 L. Ed. 2d 434 (1985). Mr. Carter's purported escape occurred while he was released on pretrial bond or bail, a condition of which was home incarceration. West Virginia Code § 61-5-10 is ambiguous as to whether a person released on bond, but subject to pretrial home incarceration, is in custody for the purposes of the escape statute. As § 61-5-10 is a criminal statute, the rule of lenity applies and this ambiguity must be resolved in favor of the defendant. For this reason, I would have reversed Mr. Carter's conviction for felony escape under these circumstances.

The escape statute criminalizes escape for those in the custody of certain individuals, and escape from confinement from institutions and facilities, and from "alternative sentence confinement," stating, in full:

> Whoever escapes or attempts to escape by any means from the custody of a county sheriff, the director of the regional jail authority, an authorized representative of said persons, a law-enforcement officer, probation officer, employee of the

1

> Division of Corrections, court bailiff, or from any institution, facility, or any alternative sentence confinement, by which he or she is lawfully confined, if the custody or confinement is by virtue of a charge or conviction for a felony, is guilty of a felony and, upon conviction thereof, shall be confined in a correctional facility for not more than five years; and if the custody or confinement is by virtue of a charge or conviction for a misdemeanor, is guilty of a misdemeanor and, upon conviction thereof, he or she shall be confined in a county or regional jail for not more than one year.

W. Va. Code § 61-5-10.

Here, after Mr. Carter was charged with a crime, the magistrate placed Mr. Carter on pretrial bond with a condition that he be on home incarceration. Via order, the magistrate required Mr. Carter to "remain at his approved residence . . . except during those hours approved in advance by the Home Incarceration Officer[.]" The magistrate order included other conditions of bond including "submit[ting] to random drug and alcohol tests at the discretion of the Home Incarceration Officer," and "not carry[ing] . . . or possess[ing] in his . . . home any firearms." The order did not explicitly require Mr. Carter to be electronically monitored. Mr. Carter signed an "Agreement to Comply with Rules of Supervision," also signed by the Home Incarceration Officer, and the agreement included the requirement that Mr. Carter stay at his residence. The document noted that if he left, he could be charged with escape and stated that Mr. Carter would "accept full responsibility for the loss or damage to the transmitter which [he] will wear and/or the Home Monitoring Unit installed at the residence where [he] will reside during [his] enrollment in the electronic monitoring program." Eventually, a corporal with the Raleigh County Sheriff's

2

Office assigned to the home confinement division received an alert that Mr. Carter's monitor had been cut, and law enforcement officers later recovered his electric monitoring bracelet from a dumpster. At a jury trial, the corporal testified that he monitored individuals on home incarceration, that he electronically monitored Mr. Carter, and that he received an alert that the bracelet had been cut. The jury convicted Mr. Carter of escape. In this appeal, he challenges his conviction on the basis of the sufficiency of the evidence, focusing on whether he was in custody for the purposes of the escape statute.

The majority affirms Mr. Carter's felony conviction, concluding that the escape statute is clear and unambiguous that a person released on pretrial bail or bond, with a condition of home confinement, is in custody. In finding the statute to be unambiguous, the majority concludes that the statute may not be construed. *See* Syl. Pt. 1, in part, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

I disagree with the majority's approach in examining the statute because it improperly takes the word "custody" out of the context of the statute, considers it in a vacuum, and cherry-picks definitions of the word to suit its ultimate conclusion. The majority looks to different definitions of the word "custody" to argue that the Legislature was clear that, because Mr. Carter was on bail with home incarceration conditions, he was also in custody. Certainly, "[i]n the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings." Syl. pt. 1, *Thomas v. Firestone Tire & Rubber Co.*, 164 W. Va. 763, 266 S.E.2d 905 (1980) (quoting

3

Syl. pt. 1, *Tug Valley Recovery Ctr. v. Mingo County Comm.*, 164 W. Va. 94, 261 S.E.2d 165 (1979)). However, one of the three definitions used by the majority—that custody means "immediate charge and control (as over a ward or a suspect) exercised by a person or an authority"—is not necessarily applicable to Mr. Carter, a defendant at his own home on pretrial release who was not in the immediate control of anyone. Furthermore, while the majority cites certain definitions of custody, it ignores another Black's Law definition of custody, "the *detention* of a person by virtue of lawful process or authority." Custody, Black's Law Dictionary (11th Ed. 2019) (definition three) (emphasis added). The majority's conclusion that the statute is unambiguous based on various definitions of a single word does not render the statute clear, unambiguous, and plain. *See* Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

A statute is ambiguous when it is "susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *See Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). A statute is also "ambiguous when the statute's language connotes 'doubtfulness, doubleness of meaning or indistinctness or uncertainty of an expression[.]'" *United Servs. Auto Ass'n v. Lucas*, 233 W. Va. 68, 72, 754 S.E.2d 754, 758 (2014) (alteration in *Lucas*) (quoting *Crockett v. Andrews*, 153 W.Va. 714, 718, 172 S.E.2d 384, 387 (1970)).

Here, contrary to the majority's conclusion, the language of the escape statute is ambiguous because it does not clarify whether a defendant released pretrial, but subject to the condition of pretrial home incarceration at the time he or she is on bail or bond, is in custody. The statute does not expressly apply to a person *released* on pretrial home incarceration, and the language of the statute further does not indicate whether a person released on bond or bail is in the custody of any of the named individuals. *See* W. Va. Code § 61-5-10. Moreover, the escape statute specifically addresses escape from certain *places* where a person has been lawfully confined, applying to a person who "escapes or attempts to escape by any means . . . from any institution, facility, or *any alternative sentence confinement*, by which he or she is lawfully confined[.]" *See id.* (emphasis added). While a charged (but not yet convicted) defendant could certainly escape from an institution or a facility, a charged but not convicted defendant (like Mr. Carter) could not escape from "alternative sentence confinement."[1] The statute's use of the word *sentence* means that the escaped defendant must have been convicted and subsequently sentenced to be in an "alternative sentence confinement." The statute provides no similar specific application to a defendant's release on *pretrial* home incarceration, where a defendant has neither a conviction nor a sentence, and has been, instead, released pretrial. *See id.* Read as a whole, the statute is "susceptible" to more than one construction and is thus ambiguous. *See Hereford*, 132 W. Va. at 386, 52 S.E.2d at 747.

---

[1] Although nowhere else in the West Virginia Code appears to reference "alternative sentence confinement," the phrase "alternative sentence" appears throughout the Code.

When examining an ambiguous statute, we must construe the statute before it is applied. Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). As we have repeatedly emphasized, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). This Court may engage in statutory construction "where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W. Va. 591, 596, 505 S.E.2d 654, 659 (1998) (quoting *Hereford*, 132 W. Va. at 386, 52 S.E.2d at 747). Furthermore, "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith*, 159 W. Va. 108, 219 S.E.2d 361.

Here, the Legislature's intent as to whether the escape statute should apply to defendants like Mr. Carter, who have been released to home confinement pretrial, is difficult to ascertain, particularly when the escape statute is read alongside other statutes regarding individuals on pretrial release. *See id.* (requiring statutes be read and applied together to determine legislative intent). The statute addressing the court's pretrial *release* of defendants indicates that a defendant could be considered to be outside of the custody of one of the escape statute's listed individuals. *See* W. Va. Code § 62-1C-1a(a)(2)(C), (D). The Legislature provides that courts may impose, as a condition of pretrial *release*, that a

6

charged person be required to participate in home incarceration pursuant to the Home Incarceration Act or an electronic monitoring program.[2] *See* W. Va. Code § 62-1C-1a(a)(2)(C), (D) (listing "Pretrial release; types of release; conditions for release; considerations as to conditions of release" as the title of the statute and cross-referencing W. Va. Code § 62-11B-1 et seq., the Home Incarceration Act, as a permitted condition of release). This pretrial release statue provides, in relevant part:

> (2) For . . . all other offenses which carry a penalty of incarceration, the arrested person is entitled to be admitted to bail subject to the least restrictive condition or combination of conditions that the judicial officer determines reasonably necessary to assure that person will appear as required, and which will not jeopardize the safety of the arrested person, victims, witnesses, or other persons in the community or the safety and maintenance of evidence. Further conditions may include that the person charged shall:
>
> . . . .
>
> (C) Participate in home incarceration pursuant to § 62-11B-1 et seq. of this code;

---

[2] The majority looks to the facts of the case, providing a laundry list of reasons why Mr. Carter is in custody and has violated the statute, based primarily upon the paperwork related to his home incarceration. Yet, a defendant's agreement and a signature on a form does not change the fact that the escape statute is ambiguous as to whether it applies to an individual on pretrial release yet participating in home incarceration. While the majority reasons that the conditions that Mr. Carter agreed to purportedly show he was in custody, including "prohibit[ing] 'persons of disreputable character from visiting his home,'" "submit[ting] to random drug and alcohol tests," and not possessing firearms or alcohol, the majority ignores the fact that these conditions are *typical* conditions of pretrial *release*. *See, e.g.*, W. Va. Code § 62-1C-1a(a)(2) (noting that an "arrested person is entitled to be admitted to bail subject to the least restrictive condition or combination of conditions that the judicial officer determines reasonably necessary" for the person to appear and for safety of the arrested person and the public, and noting further potential conditions of release, including home incarceration, participation in an electronic monitoring program, maintaining employment, and refraining from use of alcohol or narcotic drugs).

> (D) Participate in an electronic monitoring program if
> one is available where the person is charged or will reside.

*Id.* The majority makes much of the "pursuant to" language in § 62-1C-1a(a)(2)(C) to argue that the defendant was in custody, although it ignores that the section of the code where this language appears pertains to pretrial *release*.[3] While a person released on pretrial home incarceration or electronic monitoring is supervised to some extent, whether a person released on pretrial bond or bail and subject to these conditions is in *custody* pursuant to the escape statute's language is far from clear, and is even less clear when read alongside the pretrial release statute, § 62-1C-1a.[4]

---

[3] Insofar as the majority relies on definitions of a single isolated word in the escape statute, I note that "release" means "[t]he action of freeing or the fact of being freed from restraint or confinement" and "[a] document giving formal discharge *from custody*[.]" Release, Black's Law Dictionary (11th Ed. 2019) (definitions seven and eight) (emphasis added).

In straining to find that the statute is unambiguous by focusing on a single word taken out of context, the majority declines to examine the broader language of both the statute at issue and other related statutes. *See Bullman v. D & R Lumber Co.*, 195 W. Va. 129, 133, 464 S.E.2d 771, 775 (1995) (recognizing that "every part of a statute must be construed in connection with the whole, so as to make all parts harmonize, if possible, and to give meaning to each" and that "every word used is presumed to have meaning and purpose"). And, when the majority does examine the language of other statutes, it again singles out particular language to reach a preferred result, rather than also reading those statutes as a whole.

[4] The majority also relies on *State v. McGann*, a memorandum decision, and *State v. Allman* to justify its reading of the statute. *See McGann*, No. 20-0329, 2021 WL 4936282 (W. Va. Sept. 27, 2021); *Allman*, 240 W. Va. 383, 388-90, 813 S.E.2d 36, 41-43 (2018). The *Allman* Court did not specifically address the issue before us now. *See* 240 W. Va. at 388-90, 813 S.E.2d at 41-43. In *Allman*, when the defendant purportedly escaped (on bond on home confinement), the defendant was charged with a felony, yet he was ultimately convicted of a misdemeanor. The *Allman* Court's analysis—and its new syllabus point—focused on the immateriality of the outcome of the underlying *charged* conduct. *See id.*; *see* Syl. pt. 5, *id.* ("An individual charged with a felony who escapes from lawful

8

When this Court faces an ambiguous *criminal* statute, the rule of lenity applies, and we must construe the statute in favor of the defendant. Syl. pt. 5, *State ex rel. Morgan v. Trent*, 195 W. Va. 257, 465 S.E.2d 257 (1995). We construe criminal statutes in favor of defendants because "[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." Syl. pt. 1, *State v. Flinn*, 158 W. Va. 111, 208 S.E.2d 538 (1974). In other words, the rule of lenity applies "to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability." *Crandon v. United States*, 494 U.S. 152, 158, 110 S. Ct. 997, 1002, 108 L.Ed.2d 132 (1990*)*; *Trent*, 195 W. Va. at 262, 465 S.E.2d at 262 (quoting same). As the majority recognizes, when we analyze a statute, we look to legislative intent,[5] yet I must emphasize the basic constitutional principle that "a criminal statute must give fair warning of the conduct that it makes a crime[.]" *Bouie v. City of*

---

custody or confinement as prescribed in West Virginia Code § 61-5-10 (2000) (Repl. Vol. 2014) may be convicted of the offense of felony escape irrespective of the ultimate outcome of the charge for which he or she was in lawful custody or confinement."). Although the *Allman* Court concluded that the defendant in *Allman* "did not merely violate a condition of his home confinement; he breached the very confinement to which he was subject," the *Allman* Court did not analyze the language of the escape statute to determine whether a person awaiting trial on home confinement was in custody for the purposes of that statute. *See Allman*, 240 W. Va. at 390, 813 S.E.2d at 43. The *McGann* decision, in turn, relied on the facts in *Allman* to affirm a conviction of a defendant challenging the escape statute by virtue of his being on pretrial home confinement. *See McGann*, 2021 WL 4936282 at *2. The majority's reliance on *Allman* is reliance only on dicta.

[5] When examining statutes criminalizing certain behavior, we have less latitude to consider the Legislature's intent or purpose, as compared to when we examine statutes addressing other areas of the law. *State v. Choat*, 178 W. Va. 607, 616, 363 S.E.2d 493, 502 (1987).

*Columbia*, 378 U.S. 347, 350, 84 S. Ct. 1697, 1701, 12 L. Ed. 2d 894 (1964). Here, the escape statute is not sufficiently definite to provide a defendant fair notice that he may be convicted of felony escape when he absconds from pretrial release on home incarceration. For these reasons, the escape statute should not be construed to include individuals on pretrial release, yet subject to the condition of home incarceration, unless and until the Legislature more clearly establishes that the statute applies to those individuals. For these reasons, I respectfully dissent to the majority's conclusion that sufficient evidence supported Mr. Carter's conviction.