STATE OF WEST VIRGINIA

*v.*

HENRY TODD DUVERNOY

(No. 13144)

Submitted January 23, 1973.     Decided April 3, 1973.

*Leo Catsonis,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *George E. Lantz,* Deputy Attorney General, *Richard E. Hardison,* Assistant Attorney General, *Willard A. Sullivan, Jr.,* Special Assistant Attorney General, for defendant in error.

SPROUSE, JUDGE:

This case is before the Court upon a writ of error and supersedeas to the final judgment of the Circuit Court of Roane County, entered on March 26, 1971, upon a jury verdict finding the defendant, Henry Todd Duvernoy, guilty of possession of marijuana. By its final judgment, the circuit court sentenced the defendant to a term of not

less than two years nor more than five years in the West Virginia Penitentiary pursuant to the provisions of Chapter 16, Article 8A, Section 23 of Code, 1931, as amended, prior to the effective date of the repeal of Article 8A by Chapter 54, Acts of the Legislature, Regular Session, 1971. Having properly sentenced the defendant, the circuit court suspended the sentence and placed the defendant on probation for a period of two years.

The facts from the record in this case are skimpy to say the least. The testimony presented to the jury shows only a group of state and local policemen on a night hike over the fields and through the woods in a rural area of Roane County. The purpose of their trek is not developed by their testimony before the jury or by any other evidence. The officers testified that some of them were walking through a field and some of them were coming out of the woods.

The Prosecutor asked Constable O'Brien:

"Q. Officer O'Brien, directing your attention to the 13th day of September, 1971, did you as part of your duties as constable in Walton District participate in an investigation in the area of Long Ridge here in Roane County, West Virginia?

"A. Yes, sir."

The Prosecutor asked two state police officers the same question and received affirmative answers.

What they were there to investigate is not clear. The record is completely silent concerning their purposes in the moonlit fields and forests of Roane County. They had no warrant for arrest nor a search warrant. There is no evidence they were acting on a tip from informants, nor does it appear that their suspicion had been aroused by any other information. As one of the officers crossed a field, he saw the defendant and a young lady on a blanket, or as it turned out, blankets. The defendant was lying "on his back facing the sky". She was sitting. She was told by one of the officers to place her hands over her head, and the defendant was told to lie still with his

hands in sight. Nothing else was said to the defendant or his friend, but the defendant was brought to his feet and searched. A state police officer searched through the blankets with his hands under an inadequate light until another officer approached and assisted him with a flashlight. When the light illuminated the blanket, there was revealed close to the feet of the defendant a small package which was later identified as marijuana. After an officer picked up the package and examined it, he informed the defendant that he was "under arrest".

An officer of the Department of Public Safety testified briefly explaining the absence as a witness of another investigatory officer. A chemist from the Department testified briefly and identified the substance found in the package as marijuana. The blankets were introduced into evidence for the purpose of conducting a demonstration to illustrate in relation to the blankets the location of the marijuana and the position of the defendant and his friend at the time they were approached and searched.

This was all of the state's evidence. There was no evidence presented by the defense.

Counsel for the defendant makes numerous assignments of error. He contends there was an irregularity in the arraignment; that the trial court erred in not ordering the full bill of particulars requested prior to trial; that there was not sufficient evidence of possession of marijuana; that the court erred in not giving an instruction admonishing the jury not to consider a conviction of the defendant's companion returned the previous day; and that certain remarks of the prosecutor in his closing statement constituted prejudicial error. None of these assignments of error have sufficient merit to require reversal of the trial court's actions relating to them.

The principal question presented for decision requires a determination of the validity of the warrantless search of the defendant and the subsequent admission upon the trial of the case of evidence obtained as a result of that

search. An important ancillary question is whether the police officers had probable cause to arrest the defendant, or in the absence of probable cause, whether the search comes within the narrow exceptions to the rule that all searches without a warrant are per se unreasonable.

The Fourth Amendment to the Constitution of the United States provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article III, Section 6 of the Constitution of West Virginia provides:

> "The right of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

The language of Article III, Section 6 of the West Virginia Constitution is very similar to the Fourth Amendment to the Constitution of the United States. *State v. Massie,* 95 W.Va. 233, 120 S.E. 514. This Court has traditionally construed Article III, Section 6 in harmony with the Fourth Amendment. *State v. Andrews,* 91 W.Va. ·720, pt. 2 Syl., 114 S.E. 257. The Fourth Amendment, of course, has been made specifically applicable to trials in state courts. *Mapp v. Ohio,* 367 U.S. 643; *Wolf v. Colorado,* 338 U.S. 25.

In interpreting Section 6 of Article III of the Constitution of West Virginia, this Court held that unlawful searches and seizures are unreasonable within the meaning of this Section forbidding unreasonable searches and seizures. *State v. Wills,* 91 W.Va. 659, 114 S.E. 261.

" * * * The most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.'" *Coolidge v. New Hampshire,* 403 U.S. 443, 454-55.

"Except where authorized by law as incident to a lawful arrest, any search of a person or his dwelling on mere suspicion and the seizure of any article found as a result thereof, without an arrest warrant or a search warrant, is an unlawful search and seizure in violation of Section 6, Article III of the Constitution of West Virginia." *State v. Smith,* 156 W.Va. 385, pt. 1 Syl., 193 S.E.2d 550.

The first inquiry is whether the officers had probable cause to arrest the defendant Duvernoy.

"An officer, with authority to conserve the peace, may, without a warrant, arrest any person who he, *upon reasonable grounds,* believes has committed a felony, though it afterwards appears that no felony was actually perpetrated. * * * ." *State for the use of Brown v. Spangler,* 120 W.Va. 72, pt. 3 Syl., 197 S.E. 360. See also *The City of McMechen ex rel. Willey v. Fidelity and Casualty Co. of New York,* 145 W.Va. 660, pt. 1 Syl., 116 S.E.2d 388.

This Court has held that: "Probable cause to make an arrest without a warrant exists when the facts and the circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that an offense has been committed or is being committed." *State v. Plantz,* 155 W.Va. 24, pt. 1 Syl., 180 S.E.2d 614.

But an officer cannot without a warrant lawfully arrest one on a mere suspicion — this does not meet the

requirements of showing a probable cause. *Henry v. United States,* 361 U.S. 98. Neither can an officer without a warrant lawfully arrest one on a mere suspicion that he is committing a misdemeanor in his presence. *State v. Wills,* 91 W.Va. 659, 114 S.E. 261. There is, of course, a type of search that is permitted concurrently with a warrantless arrest where the arrest is otherwise lawful. *Coolidge v. New Hampshire, supra.* See also *Chimel v. California,* 395 U.S. 752, 763; *State v. Plantz, supra.* However, it is unnecessary in the case of Duvernoy's arrest to decide the extent of the permissive search because the arrest was so obviously without probable cause and unlawful. The record before us does not disclose the officers had even a suspicion that Duvernoy was engaged in a violation of any law. There is no indication that the officers had the defendant and his companion under surveillance. On the contrary, it appears from the evidence that the officers came upon them suddenly and apparently unexpectedly. There was testimony to the effect that the officers were conducting "an investigation" in the area. No hint exists, however, of the subject matter of the investigation. There may well have been a marijuana party in progress there in the forest. The police may well have had information concerning the party and that the defendant was participating in it. The state, however, completely neglected to develop at trial this or any other information indicating probable cause to believe the defendant was committing an illegal act which would subject him to an arrest without a warrant.

There are certain other narrow instances in which a suspect may be searched without an arrest, "such as an automobile in motion, searches made in hot pursuit, searches around the area where an arrest is made, things that are obvious to the senses, and property that has been abandoned, as well as searches and seizures made that have been consented to". *State v. Angel,* 154 W.Va. 615, pt. 1 Syl., 177 S.E.2d 562. See also *Coolidge v. New Hampshire,* 403 U.S. 443, 454-55; *Warden v. Hayden,* 387

U.S. 294; *Schmerber v. California,* 384 U.S. 757; *Chapman v. United States,* 365 U.S. 610; *McDonald v. United States,* 335 U.S. 451; *Zap v. United States,* 328 U.S. 624.

The facts in the instant case do not support nor does the state raise the applicability of any of these exceptions other than a contention that the marijuana was in "plain view" of the officers. The state's final contention is that the officers were confronted with a potentially dangerous situation and had the right to "stop and frisk" the defendant.

The United States Supreme Court in 1968 held in a case involving the stopping of a suspect by a police officer and the "frisking" of him without a warrant for arrest that:

> "We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." *Terry v. Ohio,* 392 U.S. 1, 30-31.

Not only is it obvious that the defendant was not under observation nor armed and dangerous, but the police officers in this instance simply were not engaged in the kind of procedures that would bring their search of the defendant within the rule of *Terry v. Ohio, supra.* Aside from that, we do not feel that the doctrine announced in *Terry v. Ohio, supra,* extends to the type of non-violent criminal activity as involved in marijuana

violations or other crimes traditionally associated as being non-violent in nature.

This Court has announced on several occasions that in instances where officers are lawfully present, illegal objects that are obvious to the senses may be seized. *State v. Angel,* 154 W.Va. 615, pt. 3 Syl., 177 S.E.2d 562; *State v. Taft,* 143 W.Va. 369, pt. 1 Syl., 102 S.E.2d 149; *State v. Thomas,* 105 W.Va. 346, pt. 1 Syl., 143 S.E. 88. The United States Supreme Court articulated this doctrine in *Coolidge v. New Hampshire, supra.* The Court stated that the "plain view" doctrine was inapplicable to the facts in that case, but states that such doctrine is applicable where (1) the police officers have a warrant to search a given area for specified objects and, in the course of the search, discovers some other article of incriminating character; (2) where the initial intrusion which brings the police within plain view of such article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, i.e., where the police may inadvertently come across evidence while in hot pursuit, where an object comes into view during a search incident to arrest. The Court defines the doctrine as being one where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object.

The initial intrusion by the local and state police officers into the area where the defendant and his companion were reposing was not supported by lawful actions as required by *Coolidge.* They certainly did not discover the marijuana inadvertently. The evidence is clear that it was discovered by careful search of the blanket and then only exposed after a second officer assisted the primary searcher with a flashlight.

We are not judging the relative evils of smoking marijuana. If, however, the evidence introduced at the trial comprised all of the facts available to the police officers before they approached the defendant and his

companion, we can conceive of few instances more violative of a citizen's right to be secure in his person against unreasonable searches and seizures.

After the verdict and overruling of the motion for a new trial, the defendant was sentenced on March 26, 1971 under the provisions of Chapter 16, Article 8A, Code, 1931, as amended.

Should this case be tried again and the defendant found guilty, it is obvious that any sentence should be imposed under the recently enacted provisions of Chapter 60A, Article 4, Code, 1931, as amended.

This case is clearly distinguishable from *State v. Rose,* 156 W.Va. 342, 192 S.E.2d 884, where the defendant was denied the benefits of Chapter 60A, Article 4 (Uniform Controlled Substances Act). In the *Rose* case, the defendant had been sentenced and the appeal time had expired prior to the passage of Chapter 60A, Article 4. The *Rose* case involved a probation violation. The instant case is still "pending". Chapter 60A, Article 6, Section 601, Code, 1931, as amended, specifically provides that the penalties of 60A-4 apply to all offenses pending after the effective date of the Act (June 10, 1971).

For reasons stated in this opinion, the judgment of the Circuit Court of Roane County is reversed, the jury verdict set aside and the defendant is awarded a new trial.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*