292 S.E.2d 50

**STATE of West Virginia**

v.

**Dana L. MEADOWS.**

**No. 14425.**

Supreme Court of Appeals of
West Virginia.

June 2, 1982.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for defendant in error.

Stephen A. Davis, Summersville, James H. Wolverton, Richwood, for plaintiff in error.

HARSHBARGER, Justice:

On September 29, 1977, at about 1:00 A.M., Leonard Edward Higginbotham drove into Summersville, West Virginia, in his 1974 Plymouth sedan, with passenger Dana Larry Meadows. They were followed by a Summersville police car whose driver later testified that Higginbotham's automobile crossed the center line several times. Both vehicles stopped, side-by-side in a double lane at a four-way flashing light in the center of town. A short time later (the exact amount of time varies in testimony from thirty seconds to three minutes), Higginbotham rolled down his window and asked directions to Interstate 79. Officer Brown, sitting in the passenger seat of the patrol car, responded that it was back the way Higginbotham had come. Higginbotham raised his window, then lowered it again to ask if he could proceed on a flashing red light. Brown responded affirmatively, and then Officer Norman, driving the patrol car, requested that Higginbotham pull over. There was no evidence that the auto's occupants spoke or acted abnormally. Officer Brown testified that had Higginbotham proceeded after the

initial conversation, probably no further investigation of the car and its occupants would have occurred.

Norman instructed Higginbotham to get out of the car and produce his driver's license and registration. He asked Higginbotham how much he had had to drink and Higginbotham replied that he had had "a couple of beers." Norman then asked Meadows to get out of the car. The passenger door was stuck shut, so Meadows exited over the driver's seat, first moving a grey overnight bag located between the driver and passenger on the front seat, to the back seat. Meadows also admitted to having had a couple of beers.

Officer Brown saw what he thought was loose marijuana and marijuana seeds on the car floor. Norman agreed that it was probably marijuana, whereupon he arrested Meadows for public intoxication and Higginbotham for driving under the influence of alcohol.[1] Then, the patrolmen searched both Meadows and Higginbotham and inventoried the car, finding marijuana in the glove compartment and in the overnight bag, totaling about a pound. The patrolmen were unable to search the trunk because it was locked and Higginbotham stated that he did not have the key. Meadows and Higginbotham were then placed in the Nicholas County Jail.

A search warrant was obtained the next morning and Officer Norman found two more pounds of marijuana in the trunk.

Meadows and Higginbotham were indicted for possession of a controlled substance with intent to deliver. Higginbotham pled guilty, agreeing to testify against Meadows, and the government dismissed other pending criminal charges against him. Meadows was found guilty by a jury.

Meadows argues that his indictment was invalid because it did not adequately allege intent; the initial stop and search were illegal; and the trial judge acted prejudicially by imposing a heavier sentence on Meadows because he stood trial.

1. The charges against Higginbotham were later reduced to public intoxication. No breathalyzer tests were ever administered nor were these

## I.

The indictment followed statutory language in W.Va.Code, 60A–4–401(a):

> Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance.

■ This statute was found constitutional in *State v. Frisby*, 161 W.Va. 734, 245 S.E.2d 622 (1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 87 (1979), Syllabus Point 1, even though clear standards were not provided for juries to use to decide about intent; Meadows' indictment followed the statutory language and thus was sufficient. *See State v.'Barnett*, 168 W.Va. 361, 284 S.E.2d 622 (1981); *State v. Taylor*, 130 W.Va. 74, 42 S.E.2d 549 (1947), Syllabus Point 1, *rev'd. on other grounds*, 160 W.Va. 497, 236 S.E.2d 431 (1977); *cf. State v. Parks*, 161 W.Va. 511, 243 S.E.2d 848 (1978).

## II.

Meadows contends that the initial stop and seizure were illegal. The State argues that the testimony adduced at trial demonstrated that the officers had probable cause to stop and arrest the defendant. We conclude that the police officers did not have probable cause to stop the car and arrest its occupants.

■ The Fourth Amendment requires that a car cannot be stopped without probable cause. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Jones v. Peyton*, 411 F.2d 857 (4th Cir. 1969), *cert. denied sub nom. Cox v. Jones*, 396 U.S. 942, 90 S.Ct. 373, 24 L.Ed.2d 243; *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980); *State*

charges ever prosecuted against Higginbotham or the defendant.

*v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973).

■ In West Virginia, probable cause is determined by looking to the facts and circumstances within the knowledge of the arresting officers. *State v. Craft, supra,* Syllabus Point 7 (quoting *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971), Syllabus Point 1). *See also State v. Canby*, 162 W.Va. 666, 252 S.E.2d 164 (1979).

■ Our facts do not demonstrate any probable cause for the police to stop Higginbotham's car. The car may have crossed the center line, but was not stopped then. The officers testified that they would not have stopped the car, but for the conversation at the traffic intersection. There were no words spoken nor actions described, that amount to probable cause for any official reaction except, perhaps, dispensation of directions and advice. Indeed, if asking a policeman directions and advice is sufficient to trigger one's arrest, simply being a travelling stranger will become hazardous to one's freedom. We find absolutely no evidence in the record to support a finding of probable cause.[2]

■ Furthermore, the State posits that its search was legal under the automobile exception.[3]

■ The United States Supreme Court announced in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that warrantless searches of cars would be permitted if the police initially had probable cause to believe that they contained contraband or evidence of crime and if exigent circumstances existed. *Carroll* recognized that there is generally a lessened expectation of privacy in a car and there is easier mobility in a car, allowing easier disposal of evidence. Justice Miller, in a case with similar facts, adopted the *Carroll* doctrine, writing that:

> [U]nder *Carroll*, the right to seize or detain the vehicle and to search it arises not out of any present act of unlawfulness by its operator or occupant. *The right to stop the vehicle comes about because of prior probable cause* to believe that the vehicle contains contraband or evidence of the commission of a crime. The exigent circumstance is that unless the vehicle is detained and searched it will be driven away and, therefore, a warrant need not be obtained. (Footnote omitted.) *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804, 810 (1980) (emphasis added).

The *Carroll* doctrine also acknowledged that if probable cause arises while a vehicle is lawfully stopped for a legitimate state purpose, then exigent circumstances may allow a warrantless search. *See Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980); *State v. Moore, supra*, 165 W.Va. at 844, 272 S.E.2d, at 810. However, this vehicle was not lawfully stopped.

■ The State does not raise any other arguments to defend its warrantless search; we will not discuss any other possible exceptions. Having found the initial stop and search illegal, the search warrant based upon that illegal seizure was also illegal. *See State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980).

---

**2.** In some limited circumstances, probable cause is not required. In such a case, the intrusion upon the Fourth Amendment privacy interest is deemed minimal. Still the action of the police must be supported by a reasonable and articulable suspicion that the person is engaged in criminal activity. *See United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *United States v. Brignoni-Ponce, supra; Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio, supra.* Even if we were to adopt such a standard, the testimony did not establish that a reasonable suspicion existed to stop the Higginbotham car.

**3.** Warrantless searches are *per se* unreasonable under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution. *See Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412–2413, 57 L.Ed.2d 290, 298–299 (1978); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980); *State v. Duvernoy, supra.* Certain exceptions are recognized, *State v. Moore, supra* at 809, n. 4, and the State carries the burden of proof on any such exceptions. *Id.*, at 809.

### III.

The trial judge stated when he sentenced Meadows:

> THE COURT: Mr. Wolverton, right, these are co-indictees. In the Higginbotham case Mr. Higginbotham came in and said "I'm guilty and I plead guilty," and this was his attitude. He was convicted within himself. That is the reason for the difference in the two penalties. Your client came in and says, and still says, "I'm not guilty," and it took twelve people of Nicholas County to tell him he was guilty. This is this Court's feeling, that in order that some incentive be given to those persons that are convicted within themselves first, that there should be some incentive, and the Court has compassion, as any Court would. In this case one of the observations made was the negative attitude of this client here.

> MR. WOLVERTON: In other words, if a man stands trial and is convicted in this Court, then the question of equal justice doesn't apply to a man who pleads not guilty. He has a right to stand trial and he says he's not guilty.

> THE COURT: Absolutely. I don't intend to argue the philosophies any further. The Court has made its rulings and he will now be in custody of the Sheriff for further execution of the sentence.

 Punishment cannot be increased merely because one decides to pursue his right to trial. The United States Supreme Court in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), *reh. denied*, 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511, stated that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort" and is "patently unconstitutional". *Id.*, at 363, 98 S.Ct. at 667. *See also United States v. Capriola*, 537 F.2d 319 (9th Cir. 1976); *Hess v. United States*, 496 F.2d 936 (8th Cir. 1974); *but see Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978) (no *per se* rule against encouraging guilty pleas).

Although many factors are considered in determining an appropriate sentence, a decision by a defendant to plead innocent and have his day in court is not one of them. There is no line in our law that rewards those who are "convicted within themselves" and punishes those who stand to be convicted by a judge or jury.

Reversed and remanded for new trial.